UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

AAREN BURGOS,

                              Plaintiff,

                                                      9:22-CV-1327
              v.                                      (GTS/CFH)

SUPERINTENDENT BELL, et al.,

                              Defendants.

_____

APPEARANCES:

AAREN BURGOS
Plaintiff, pro se
17-A-0605
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953


GLENN T. SUDDABY
United States District Judge

## DECISION AND ORDER

## I.   INTRODUCTION

        Plaintiff Aaren Burgos commenced this action by filing a pro se civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to

proceed in forma pauperis ("IFP").  *See* Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").

By Decision and Order entered on January 17, 2023, this Court granted plaintiff's IFP

Application, but following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and

28 U.S.C. § 1915A(b), found that it was subject to dismissal for failure to state a claim upon

which relief may be granted.  Dkt. No. 5 ("January 2023 Order").  In light of plaintiff's pro se

status, he was afforded an opportunity to submit an amended complaint.  *Id*. at 14-16.

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 8 ("Am. Compl.").[1]

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    The Complaint and January 2023 Order

In his original complaint, plaintiff asserted Section 1983 claims against defendants Bell, Stuart, Tammer, Seymour, Scott, and Pachelly based on alleged wrongdoing that occurred while he was incarcerated at Clinton Correctional Facility.  *See generally* Compl.

The complaint was construed to assert Eighth Amendment failure-to-protect claims against defendants Bell, Stuart, Tammer, and Seymour, and Eighth Amendment medical indifference claims against defendants Scott and Pachelly based on alleged events that occurred between September and December, 2019.  *See* January 2023 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, and plaintiff was afforded thirty (30) days to submit an amended complaint.  *See* January 2023 Order at 15.

### B.    Overview of the Amended Complaint

As with the original complaint, the amended complaint alleges wrongdoing that occurred between September and December, 2019, while plaintiff was incarcerated at

---

[1]  Because plaintiff is proceeding IFP and suing government officials, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to this statute was discussed at length in the January 2023 Order and it will not be restated herein.  *See* January 2023 Order at 3-4.

Clinton Correctional Facility, and names the same six corrections officials as defendants. *See generally*, Am. Compl.  The following facts are set forth as alleged by plaintiff in the amended complaint.

Between late September and early October of 2019, plaintiff wrote letters to defendant Clinton Correctional Facility Superintendent Bell expressing concern for his safety and requesting placement in protective custody "due to ongoing conflicts between plaintiff and other inmates[.]"  Am. Compl. at 5, 8.  Plaintiff also "sent copies of these letters to Albany in hopes [of] receiv[ing] extra assistance[.]"  *Id*. The letters contained "nicknames" and "cell locations of problematic inmates who were causing threats to plaintiff."  *Id*. at 6.  Instead of addressing plaintiff's concerns, defendant Bell "had" defendant Corrections Officer Tammer deliver plaintiff "a protective custody refusal" document, which plaintiff "signed under duress" sometime in October or early November, 2019.  *Id*. at 5-6.

When defendant Tammer delivered the "protective custody refusal" document, plaintiff "notified" this official regarding the "threats on his safety[.]"  Am. Compl. at 6.  Thereafter, plaintiff provided defendant Tammer and defendant Corrections Officer Seymour with the "names and cell location" of inmates who threatened him with harm.  *Id*.  These officials, however, failed to address plaintiff's concerns.  *Id*.

On November 15, 2019, plaintiff received a letter from an unidentified Albany official, which was "carbon copied . . . to Superintendent Bell."  Am. Compl. at 5.  Around this time, plaintiff sent defendant Bell additional letters requesting protective custody and advising that defendant Corrections Sergeant Stuart had "placed [him] on a 72-hour investigation that lasted 144 hours[.]"  *Id*.  Defendant Stuart refused to "authorize [plaintiff's] cell transfer to

protective custody" despite knowing that "there were serious conflicts between plaintiff and other inmates and that plaintiff's health and safety were at risk." *Id*. at 8.

On November 19, 2019, plaintiff submitted a grievance regarding his unanswered request for protective custody. Am. Compl. at 5. Two days later, plaintiff spoke with defendant Tammer, who threatened to force plaintiff to sign another protective custody refusal form based on plaintiff's grievance. *Id*. at 5, 8.

On November 24, 2019, defendant Seymour spoke with plaintiff at his cell "in a vulgar, disrespectful, and racist manner" and informed him that nobody he contacted regarding his safety concerns intended to "assist" him. Am. Compl. at 5-6. At the time plaintiff spoke with defendants Tammer and Seymour, these officials were both aware that an "assault by other inmates . . . was about to take place." *Id*. at 8.

Two days later, plaintiff "was cut on [his] face" while en route to the messhall for lunch. Am. Compl. at 6. The inmate who assaulted plaintiff was one of the inmates that plaintiff had previously identified as posing a risk of harm to him. *Id*. at 7.

Following the incident, defendant Corrections Sergeant Scott escorted plaintiff to the medical facility. Am. Compl. at 6. After plaintiff received treatment for his facial wound, defendant Scott advised him, "in an inappropriate vulgar manner," that he was going to be sent back to "the block where the assault occurred." *Id*. However, because plaintiff's counselor was present, he was instead "brought to E-block." *Id*.

After plaintiff arrived at his new cell, defendant O.R.C. Pachelly refused to allow a nurse to enter the cell to "further clean and/or check [plaintiff's] wound." Am. Compl. at 7. Apparently later that same day, plaintiff identified the inmate who assaulted him on a video

4

recorded by defendant Scott.  *Id*.

On December 15, 2019, plaintiff was "seen" by defendant Pachelly, "who verbally abused, degraded, threatened, [and] blackmailed plaintiff."  Am. Compl. at 6.

Liberally construed, the amended complaint asserts Eighth Amendment failure-to-protect claims against defendants Bell, Stuart, Tammer, and Seymour, and Eighth Amendment medical indifference claims against defendants Scott and Pachelly.[2]

Plaintiff seeks monetary relief.  Am. Compl. at 11.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

## C.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional

---

[2]  Insofar as plaintiff alleges that certain named defendants subjected him to verbal harassment and name calling, as with the original complaint, the amended complaint lacks allegations which plausibly suggest that plaintiff suffered any sort of physical injury based on this wrongdoing.  Thus, the alleged verbal harassment and name calling that plaintiff experienced does not give rise to a cognizable claim under Section 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) ("In this Circuit, allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim."); *see also Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) ("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.") (citation omitted); *Ruffino v. Murphy*, No. 09-CV-1287, 2010 WL 1444562 at *4 (D. Conn. Apr. 12, 2010) ("[D]istrict courts within the Second Circuit have held that allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676.  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Iqbal*, 556 U.S. at 676); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (noting that a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

### 1. Eighth Amendment Failure-to-Protect Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's

6

actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[3]

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs*., 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836.  In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id*.  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting

---

[3]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

*Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact).  "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed,[4] the Court finds that plaintiff's failure-to-protect claims against defendants Bell, Stuart, Tammer, and Seymour survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Eighth Amendment Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104.  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698,

---

[4] *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "First, the alleged deprivation must be, in objective terms, sufficiently serious."  *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

"Although medical deliberate indifference claims are most often asserted against medical personnel, non-medical personnel may also be held liable for deliberate indifference to medical needs where a plaintiff proves that 'prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Dailey v. Fuller*, No. 9:15-CV-1051 (BKS/TWD), 2016 WL 7732236, at *9 (N.D.N.Y. Dec. 5, 2016) (quoting *Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995) (table)), *report and recommendation adopted by* 2017 WL 108056 (N.D.N.Y. Jan. 11, 2017); *see also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

9

Here, the allegations in the amended complaint differ from the original complaint only insofar as the amended complaint expressly alleges that after plaintiff was initially treated for his injuries on November 26, 2019, defendant Pachelly refused to allow a nurse to enter plaintiff's cell to "further clean and/or check [plaintiff's] wound."  Am. Compl. at 7.[5] The amended complaint, however, does not allege that plaintiff was in need of further medical treatment when the nurse arrived at his cell, or that the visit was made in response to his complaints of pain.  Moreover, the amended complaint lacks allegations which plausibly suggest that plaintiff's condition worsened, in any respect, as a result of not receiving further evaluation of his "wound" on November 26, 2019.  *Cf. Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (noting that "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment *if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment*" (emphasis added)); *Odom v. Kerns*, No. 99-CV-10668, 2008 WL 2463890, at *7 (S.D.N.Y. June 18, 2008) (cuts and open wounds that eventually became infected could be serious medical needs).  Thus, the Court has no basis to plausibly infer that plaintiff's condition was sufficiently serious at the time defendant Pachelly allegedly interfered with his ability to receive further evaluation.

Furthermore, aside from these allegations, the amended complaint does not allege that defendants Scott or Pachelly interfered with or delayed plaintiff's access to medical treatment.  In fact, the amended complaint lacks any allegations which plausibly suggest that

---

[5]  The amended complaint expressly alleges that after plaintiff was assaulted by an inmate, he was escorted to the medical facility, where his "wound was cleaned, taped, ointment was added, then a gauze was placed over the wound."  Am. Compl. at 6.

plaintiff was ever denied medical treatment at any point after November 26, 2019.[6]

Accordingly, and for the reasons set forth in the January 2023 Order, plaintiff's medical indifference claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that plaintiff's Eighth Amendment failure-to-protect claims against defendants Bell, Stuart, Tammer, and Seymour **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Bell, Stuart, Tammer, and Seymour.  The Clerk shall forward a copy of the summons and amended complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that upon the completion of service, a response to the amended complaint

---

[6] Plaintiff's allegation that defendant Pachelly "blackmailed" him is also entirely conclusory, without any indication as to what this official said or did.  Thus, the Court has no basis to plausibly infer that such wrongdoing amounted to a violation of plaintiff's constitutional rights.

be filed by defendants Bell, Stuart, Tammer, and Seymour, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: March 24, 2023
      Syracuse, NY

Glenn T. Suddaby
U.S. District Judge

12